## BUILDERS SUPPLY CO. v. NORTH AUGUSTA ELECTRIC AND IMPROVEMENT CO.

1. Pleadings—Proof.—The allegations that plaintiff, by virtue of a contract and agreement with the agents of the defendant, furnished and sold to said agents, who were duly authorized to make such contract and with consent of defendant, certain articles, is supported by proof here.

2. Mechanics Lien—Principal and Agent.—If a party owning a lot of land contract with another to build thereon a house for a certain price and to convey the completed house and lot free from all claims and liens and authorized and permitted the purchaser to execute a contract with a builder; supervised and directed the contract and work; took bond from builder to indemnify himself from loss; accepted entire benefits of contract, and with full knowledge of all the facts, paid to a corporation furnishing material and cash for

labor to builder part of amount to be paid for the house, such owner *consents* to the furnishing of the materials and cash to the builder, and the corporation furnishing the material and cash has a mechanics' lien on the building and lot under Sec. 3008 of Code of 1902, for difference between the amount actually paid and the amount to be paid for building the house, although the builder's contract provided that the material should be purchased from the said corporation, not to exceed in amount a specified sum.

Before ALDRICH, J., Aiken, June, 1904.    Modified.

Petition to enforce mechanic's lien by Builder's Supply Co. against North Augusta Electric and Improvement Co. and Mrs. M. M. R. Boatwright.    From Circuit decree, the Electric and Improvement Company appeals.

*Mr. George T. Jackson,* for appellant, cites: *Contractor was not agent of defendant:* 19 S. C., 1.    *Purpose and effect of statutory liens:* 2 Jones on Liens, secs 841, 1235; 60 Ga., 105; Code 1902, 3008; 19 S. C., 5; 16 S. C., 143; 20 Ency., 2 ed., 447:    *No lien for cash loaned:* 20 Ency., 2 ed., 269, 270, 349; 49 Ga., 619.

*Messrs. Hendersons,* contra, cite: *Did the defendant company "consent" to the petitioner furnishing the material:* 19 S. C., 1.    *Creditor may apply payments not directed:* 61 S. C., 137; 56 S. C., 443.

April 14, 1905.    The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE.    On the 12th day of August, 1902, the North Augusta Electric and Improvement Co., owning lands in the town of North Augusta, S. C., agreed to and with Mrs. M. M. R. Boatwright to sell her two lots of land, to wit: lots known as Lots Nos. 4 and 5, in block No. 10, on a plan of lots made in 1891 by Charles Broeck, bounded as follows: north by lot No. 3, east by West avenue, south by lot No. 6, west by an alley, fronting 100 feet on West avenue and running back 200 feet to an alley—which

said premises are owned by the defendant, North Augusta
Electric and Improvement Co., at the price of $400; and
said North Augusta Electric and Improvement Co. agreed to
and with Mrs. M. M. R. Boatwright that they would erect
on said lot a dwelling house for the sum of $1,900, but that
the expense to said company in the erection of said dwelling
house should be limited to $1,800.    The said Mrs. M. M. R.
Boatwright was accorded the privilege of selecting the con-
tractor to build said dwelling house and furnish all the mate-
rial therefor, according to the plans and specifications of
said dwelling house previously agreed upon by and between
the said North Augusta Electric anad Improvement Co. and
the said Mrs. M. M. R. Boatwright.    The said parties
agreed upon B. F. Roberts as the contractor to build said
dwelling house, he furnishing all the material necessary
therefor, and the said North Augusta Electric and Improve-
ment Co. agreed to pay said sum of $1,800 for the erection
of said dwelling house according to the plans and specifi-
cations hereinbefore referred to.    The said North Augusta
Electric and Improvement Co. furnished the sum of
$1,350 to pay for the material and labor used in the con-.
struction of said dwelling house, which latter was nearly
completed.    But it was also agreed upon between the North
Augusta Electric and Improvement Co. and Mrs. M. M. R.
Boatwright and the contractor, B. F. Roberts, that all the
material should be purchased from and furnished by the
Builder's Supply Co., a corporation under the laws of Geor-
gia, resident in the city of Augusta.    After the payment to
the said Builder's Supply Co. of the $1,350, there was still a
balance left unpaid, as they claim, of the sum of $540.81.
This the North Augusta Electric and Improvement Co. de-
clined to pay.    A mechanic's lien was filed in the office of
the clerk of the court for Aiken County, S. C., whereby the
Builder's Supply Co. sought to enforce their lien to recover
said $540.81.    A petition was filed by them against said
North Augusta Electric and Improvement Co. and Mrs. M.
M. R. Boatwright, as defendants.    The petition gave a his-

tory of the engagements of these defendants, respectively, which has been heretofore sketched. Mrs. Boatwright did not contest the same, though she answered. The North Augusta Electric and Improvement Co. filed an answer, in which they vigorously contested the petitioner's rights. By an order and agreement of the parties, the testimony of each side to the controversy was taken before the master. This testimony included not simply oral testimony of the parties, but the documents which had been signed, and which included exhibits B, C, D, E and F, as follows:

### *Exhibit B.*

"State of Georgia, County of Richmond.

"This memorandum of agreement entered into this 14th day of August, 1902, between M. M. R. Boatwright, as party of the first part, and North Augusta Electric and Improvement Co., a corporation of the State of South Carolina, as party of the second part,

"Witnesseth, That the said party of the second part agrees to sell to the said party of the first part a certain house and lot in Aiken County, State of South Carolina, for the sum of $2,300, said house to be erected on a lot known as lots Nos. 4 and 5, block No. 10, on a plan of lots made by Charles Boeck, C. E., in 1891.

"The said party of the first part agrees to pay for the said house and lot the said sum of $2,300, payable $400 cash and the balance according to the tenor of certain promissory notes, to bear date the 14th day of September, 1902, which she hereby binds herself to execute and deliver to the said party of the second part on or before the said date, as follows: One note for the sum of $33.90, due the 14th day of October, 1902, and eighty-three other notes for the sum of $33.90 each, and due on the 14th day of each and every month thereafter for eighty-three consecutive months.

"In witness whereof, the said party of the first part has hereunto affixed her signature the day and year first above written.   M. M. R. Boatwright."

"Witness: Crommelin Fleming."

*Exhibit C.*

"Augusta, Ga.

"This agreement, made the 13th day of August, in the year 1902, by and between B. F. Roberts, party of the first part (hereinafter designated the contractor), and M. M. R. Boatwright, party of the second part (hereinafter designated the owner),

"Witnesseth, That the contractor, in consideration of the fulfillment of the agreement herein made by the owner, agrees with the said owner as follows:

"Article I. The contractor, under the direction and to the satisfaction of M. M. R. Boatwright and North Augusta Electric and Improvement Co., shall and will provide all the materials and perform all the work shown on the drawings furnished by M. M. R. Boatwright for a one and one-half story dwelling to be built on lots Nos. 4 and 5, in block 10, in North Augusta, S. C., according to the plans and specifications signed by the contractor and owner and made part of this agreement.

"Article III. No alterations shall be made in the work shown or described by the drawings, except upon an order of the owner, and when so made, the value of the work added or omitted shall be computed by the contractors and owners, and the amount so ascertained shall be added to or deducted from the contract price.

"Art. IV. The contractor shall provide sufficient, safe and proper facilities at all times for the inspection of the work by the owner, or her authorized representatives.

"Art. V. Should the contractor at any time refuse or neglect to supply a sufficiency of properly skilled workmen, or of materials of the proper quality, or fail in any respect to prosecute the work with promptness and diligence, or fail in

the performance of any of the agreements herein contained, such refusal, neglect or failure being proved by the owners, the owner shall be at liberty, after ten (10) days' written notice to the contractor and bondsmen, to provide any such labor or materials, and to deduct the cost thereof from any money then due or thereafter to become due to the contractor under this contract; and if the owner shall prove that such refusal, neglect or failure is sufficient ground for such action, the owner shall be at liberty to terminate the employment of the contractor for the said work and to enter upon the premises and take possession, for the purpose of completing the work comprehended under this contract, of all materials, tools and appliances thereon, and to employ any other person or persons to finish the work, and to provide the materials therefor; and in case of such discontinuance of the employment of the contractor he shall not be entitled to recover any further payment under this contract until the said work shall be wholly finished, at which time, if the unpaid balance of the amount to be paid under this contract shall exceed the expense incurred by the owner in finishing the work, such excess shall be paid by the owner to the contractor, but if such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner.

"Art. VI. The contractor shall complete the several portions, and the whole of the work comprehended in this agreement by and at the time or times hereinafter stated, October 12th, 1902. * * *

"Art. IX. It is hereby mutually agreed between the parties hereto, that the sum to be paid by the owner to the contractor for said work and materials shall be $1,800, subject to additions and deductions as hereinbefore provided, and that such sum shall be paid in current funds by the owner to the contractor in installments as follows: (1-4) one-fourth when framed and raised. (1-4) one-fourth when weatherboarded and covered. (1-4) one-fourth when plastered and floored. (1-4) one-fourth when completed according to plans and specifications which form a part of this contract.

The final payment shall be made within ten days after the contract is fulfilled. If at any time there shall be any evidence of any lien or claim for which, if established, the owner of the said premises might become liable and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due or thereafter to become due an amount sufficient to completely indemnify him against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all monies that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default.

"Art. X. It is further mutually agreed between the parties hereto that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part and that no payment shall be construed to be an acceptance of defective work or improper material.

"Art. XI. The contractor shall during the progress of the work maintain full insurance on said work, in his own name and in the name of the bondsmen, against loss or damage by fire. The policies shall cover all work incorporated in the building, and all materials for the same in or about the premises, and shall be made payable to the parties hereto, as their interest may appear.

"Art. XII. The said parties, for themselves, their heirs, executors, administrators and assigns, do hereby agree to the full performance of the covenants herein contained.

"In witness thereof, the parties to these presents have hereunto set their hands and seals, the day and year first above written.

"B. F. Roberts.          (Seal.)

"M. M. R. Boatwright.    (Seal)."

"In presence of"

*Exhibit D.*

"Contract.—This agreement made this 12th day of August, 1902, between B. F. Roberts, of the first part, and M. M. R. Boatwright, of the second. part, both parties of the city of Augusta, State of Georgia,

"Witnesseth, That the party of the first part, for the consideration hereinafter named, covenants and agrees with the party of the second part, to perform in a faithful and workmanlike manner, the following specified work :

"To build on West avenue, North Augusta, S. C., a frame residence, according to plans and specifications, said plans and specifications furnished by the party of the second part, and signed by the party of the second part for the purpose of identification, it being understood and agreed that the said plans and specifications, are not to be changed or altered in any way without first obtaining written consent from the party of the second part.

"In addition to the above, the party of the first part agrees to become responsible for all material delivered at the building. The work to commence on August 12, 1902, and to be completed on or before October 12, 1902, and it is further agreed that the party of the first part is to deliver the building complete, as per plans and specifications, at the time above stated free from all mechanics' or other liens of any kind whatsoever.

"And the party of the second part covenants and agrees with the party of the first part in consideration of the faithful performance of the above specified work, to pay to the party of the first part, the sum of $1,800, to be divided in four equal payments.

"It is mutually agreed between both parties, that the party of the first part is to purchase all material from the Builder's Supply Co., and in no event will the bills be allowed to exceed $1,400, and said $1,400 to be deducted from the contract price of $1,800, as above mentioned.

　　　　　　　　　　　　"B. F. Roberts,
　　　　　　　　　　　　"M. M. R. Boatwright."

Exhibit E. This is an indemnity bond, signed by B. F. Roberts as principal, and by the American Bonding Trust Co., of Baltimore, as surety, said bond indemnifying the North Augusta Electric and Improvement Co. in the sum of $1,000 against any default on the part of the said B. F. Roberts in the full and faithful performance of the contract which said bond recites he has entered into "for the erection and completion of a one and one-half story frame dwelling house to be built on lots 4 and 5, block No. 10, in North Augusta, in acocrdance with plans and specifications," which said house and lot is the house and lot upon which the lien is claimed in this action. This indemnity bond is dated July 31st, 1902.

Exhibit F. This paper is a bond for title entered into between Mrs. M. M. R. Boatwright and the North Augusta Electric and Improvement Co., on the 28th day of January, 1903. Said company obligates itself to sell to Mrs. Boatwright the identical house and lot upon which the lien in this action is claimed, "warranting same to be free from liens of every and any kind," in consideration of the payment of $3,231, and upon which amount it is acknowledged in said bond that the sum of $400 has already been paid.

The cause came on to be heard before his Honor, Judge James Aldrich, who pronounced the following decree:

"The defendant, the North Augusta Elecric and Improvement Co., is a corporation created by and under the laws of the State of South Carolina. It owns a body of land on the Carolina side of the Savannah River, in Aiken County, a part of which is laid out in streets and lots, and is known as the town of North Augusta. The company sells these lots, and also contracts or erects residences upon them for the purchasers.

"The defendant, Mrs. M. M. R. Boatwright, is the wife of A. M. Boatwright, and in 1902 they resided in Augusta, Ga. Mrs. Boatwright desired to purchase a lot or lots in North Augusta from the North Augusta Electric and Improvement Co. A. M. Boatwright, her husband, acted as her agent in

24—71.

the premises.    Besides purchasing a lot, Mrs. Boatwright desired the company to erect a house upon the lots; and for the company to sell her the house and lot.    Mrs. Boatwright obtained plans and specifications according to which the said house was to be built, and the bids of different contractors for building the house.    These she submitted to the company.    B. F. Roberts, a contractor, submitted a bid to build the said house for $1,800, which attracted the attention of Mrs. Boatwright.

"On August 14, 1902, Mrs. Boatwright entered into a written agreement to purchase from the said company a lot of land, known as lots Nos. 4 and 5, block 10, on a plan of lots made by Charles Broeck, C. E., in 1891, upon which the said company obligated itself to erect a certain house, according to certain plans and specifications, to cost $1,800.    She agreed to pay said company for said house, to be built and the lot upon which it was to be erected, $2,300.    This amount was to be paid, according to said memorandum, $400, cash, and the balance according to the tenor of certain promissory notes, to bear date of the 14th day of September, 1902, which she was to execute; eighty-four notes in all, one for each month, for eighty-three consecutive months.    These matters are all set out in Exhibit B, included in the testimony.    Mrs. Boatwright paid the cash as required, to the satisfaction of the company.

"The North Augusta Electric and Improvement Co. authorized and allowed Mrs. Boatwright to enter into a written contract with the said B. F. Roberts to build for her a house, according to the plans and specifications above referred to, for the sum of $1,800.    This contract is marked Exhibit C, is under seal and dated August 13, 1902.    The same contract, not under seal expressed in other language, and dated August 12, 1902, is submitted in evidence as Exhibit D.

"The contract, Exhibit D, contains this stipulation: 'It is mutually agreed between the parties that the party of the first part, B. F. Roberts, is to purchase all material from the

Builder's Supply Company, and in no event will the bill be allowed to exceed $1,400, and said $1,400 to be deducted from the contract price of $1,800, as above mentioned.'

"The agreement of August 13, 1902, contains the provision that Roberts is to perform the contract 'under the direction and to the satisfaction of M. M. R. Boatwright and North Augusta Electric and Improvement Co.'

"All the papers, contracts, heretofore mentioned, were, as matter of fact, entered into August 14, 1902, the date of the agreement wherein Mrs. Boatwright and the company contracted for the house and lot.

"Under these contracts, B. F. Roberts began the erection of the said house, and purchased from the plaintiff, the Builder's Supply Co., material used in the erection of said house, and obtained money alleged to be used for paying the laborers employed in building it. Upon both of these there is a balance alleged to be due.

"On July 31, 1902, the North Augusta Electric and Improvement Co. required B. F. Roberts to enter into a bond to said company with the American Bonding and Trust Co., of Baltimore city, as surety, in the sum of $1,000, conditioned *inter alia* for the erection and completion of a one and one-half story frame building house, to be built on lots 4 and 5, in block 10, North Augusta, S. C., in accordance with plans and specifications.

"B. F. Roberts, it is alleged, not only obtained materials and money, as stated, from the Builder's Supply Co., but also failed to pay for same, and to complete the house. It is also alleged that Mrs. Boatwright, at her own expense, placed conveniences, ornaments, etc., in the building. She is now in possession of the house. Roberts, some time after he ceased work upon the house, was adjudged a bankrupt.

"On January 28, 1903, in pursuance of the agreement of August 14, 1902, the North Augusta Electric and Improvement Co. executed and delivered to Mrs. Boatwright, the bond for title, set up in the evidence as Exhibit F; in which said company obligated itself to make good and sufficient title

to the said lots and house, warranting the same to be 'free from lien of every and all kinds.'

"The North Augusta Electric and Improvement Co. paid a large portion of the $1,800, which it. agreed to pay for the erection of the said house; but had not paid the full amount. Said company not only authorized and permitted Mrs. Boatwright to enter into the building contract with Roberts, but also maintained a supervision of the building, and paid the money which went to Roberts and to the plaintiff, or certainly a large part of it. These figures will be considered further on.

"It appears that the construction of the house cost more than $1,800, which, under the contract of the North Augusta Electric and Improvement Co., it was to cost.

"On February 10, 1903, the plaintiff filed its 'lien' in this proceeding and the complaint and petition herein were served on May 18, 1903. The lien is claimed against both defendants. The materials and cash, according to the lien as filed, was furnished by plaintiff from August 14, 1902, the date of the first charge, up to November 12, 1902, the date of the last charge. The total amounts to $2,057.85, various payments and credits allowed, made August 30th to November 12, 1903, aggregate $1,517.04, leaving a balance, as alleged in the complaint or petition herein, of $540.81; the amount for which plaintiff demands judgment.

"Of the amout, to wit: $540.81, $439.23 is for materials furnished by plaintiff, and used in the erection of the house; $101.58 was the cash furnished by plaintiff to Roberts with which to pay his laborers, and by him paid to them.

"On August 15, 1902, B. F. Roberts gave an order upon the North Augusta Electric and Improvement Co. as follows: 'Gentlemen: You will please pay to A. M. Boatwright all money when due on contract for residence of M. M. R. Boatwright. (Signed) B. F. Roberts.' And on the back of this order appears, 'Pay to the order of the Builder's Supply Co. (Signed) A. M. Boatwright. August 15, 1902.'

"The North Augusta Electric and Improvement Co. has paid $1,350.00 and this has gone to the plaintiff company and has been credited upon its account against B. F. Roberts.

"I have considered the accounts as stated in the 'Lien' filed and find it to be as follows:

| | | |
|---|---|---|
| "Total .. ................................. | | $2,057 85 |
| Credits allowed (errors, etc.)...... | $167 04 | |
| Material .. .................... | 1,337 23 | |
| Cash ... .................... | 553 58 | |
| | $2,057 85 | $2,057 85 |

Stated according to application:

| | | |
|---|---|---|
| Total .. ...................... | | $2,057 85 |
| To cash ...................... | $452 00 | |
| To material ................... | 898 00 | |
| To credits allowed ............. | 167 04 | |
| To unpaid cash ................ | 101 58 | |
| To unpaid for material.......... | 439 23 | |
| | $2,057 85 | $2,057 85 |

"The evidence is long and I shall refer to it.

"(1) Has the plaintiff a lien upon the lot in question (described in the lien and petition) in any amount?

"(2) If so, what is the amount of said lien for material?

"(3) Has plaintiff a lien in any amount, for cash furnished to be expended for labor upon the house?

"(4) If a lien for cash, in what amount?

"The plaintiff or petitioner, claims its lien under section 3008 of the Civil Code of this State, which reads:

" 'Any person to whom a debt is due for labor performed or furnished, or for materials furnished and actually used in the erection, alteration, or repairs of any building or structure upon any real estate, by virtue of an agreement with or by consent of the owner of such building or structure, or any person having authority from, or rightly acting

for, such owner, in procuring or furnishing such labor or materials, shall have a lien upon such building or structure, and upon the interest of the owner thereof in the lot of land upon which the same is situated, to secure the payment of the debt so due to him, and the costs which may arise in enforcing such lien under this chapter, except as is provided in the following section.'

"The material was furnished by the plaintiff by the 'consent' of the 'owner,' and 'by virtue of an agreement with' 'a person having authority from' and 'rightfully acting for such owner' in 'procuring' such materials. I have construed the word 'consent' as defined in *Geddes* v. *Bowden,* 19 S. C., 1, and *Gray* v. *Walker,* 16 S. C., 147, in implying something more than a mere acquiescence in a state of things already in existence. It implies an agreement to that which, but for the consent, could not exist, and which the party consenting has the right to forbid. The North Augusta Electric and Improvement Co. was to sell the lot with the house to be erected, at its expense, to Mrs. Boatwright. The sale was to be consummated after the completion of the house at the expense of the company. This company ratified the agreement on January 28, 1903, when it executed and delivered to Mrs. Boatwright its second bond for title, and upon which said company acknowledges the receipt of $400.

"The Electric and Improvement Co., after contracting—indeed, before the contract of the sale to Mrs. Boatwright was made—knew of the plans and specifications, proposed by Mrs. Boatwright's agent, and the Improvement Co. agreed to build that house for $1,800. The Improvement Co. required a bond from Roberts, the contractor, to build the house, etc., according to these specifications. This security bond is dated July 31, 1902, conditioned to properly build, etc., the house which said company, in the next month, August, obligated itself to erect for and sell to Mrs. Boatwright. The Improvement Co. authorized and, indeed, in part, prepared the contract to build, entered into between Mrs. Boatwright and Roberts. Mrs. Boatwright was acting

as the agent of the North Augusta Electric and Improvement Co.

"The fact that Mrs. Boatwright signed papers in her own name, is not material.   If she was acting for said Improvement Co., with their consent, as their agent, her failure to reveal her 'undisclosed principal' would not relieve the company.   The responsibility of the Improvement Co. can be, and is, revealed by the circumstances of the case, the documentary and oral testimony and the ratification of said contract by said company.   Without citing in full, I refer to the law upon the subject.   Mecham on Agency, secs. 449, . 695, 701, 702; Story on Agency, sec. 160a; *Dupont* v. *Mt. Pleasant Co.,* 9 Rich., 258; I. A. and E. Ency., 2d ed., pp. 1050, 1054; *Bacon* v. *Sondley,* 3d Strob., 542; *Nash* v. *Towne,* 5 Wallace, 703-4.

"The following circumstances and oral testimony clearly show that Mrs. Boatwright, when she signed the contract with Roberts to erect the house, was acting for the North Augusta Electric and Improvement Co., with its consent and authority, and not for herself.   First, the company had contracted to build the house.   Second, the company owned the land on which the house was to be built.   Third, the company by its general manager, directed and authorized Mrs. Boatwright to contract with Roberts.   Fourth, the company, by its officers, supervised and directed said contract.   Fifth, the company required and obtained a bond from Roberts to protect itself, not Mrs. Boatwright, for the faithful performance of the contract between Mrs. Boatwright and Roberts.   Sixth, the company accepted the entire benefits of said contract.   Seventh, the Improvement Co., with full knowledge of all facts, paid to the plaintiff company $1,350. Eighth, by the second bond for title of the Improvement Co. to Mrs. Boatwright for the lot and the house as erected, the company accepted with knowledge the benefits of said contract.   See *Welch* v. *Mfg. Co.,* 55 S. C., 586.

"I conclude that the plaintiffs have a lien for the materials

furnished and actually used in the construction of the house upon the lot upon which it is constructed.

"The North Augusta Electric and Improvement Co. is the owner of the lot and house. Mrs. Boatwright is not the legal owner of the same; she has an equitable interest in the property, but no title therefor. I need not discuss her interests here, for the judgment must be against the Improvement Co., whose title is superior to the interest of Mrs. Boatwright.

"The North Augusta Electric and Improvement Co. has paid $1,350 on its obligation for $1,800, and this has been paid to the plaintiff company. Of this amount, to wit: $1,350, the sum of $452 was applied to the payment of $553.58, the cash advanced by the plaintiff company to the payment of the laborers engaged in the construction of the house in question. The unpaid balance for the cash that was advanced by plaintiff, amounting to $101.38, is claimed by the plaintiff under this lien proceeding.

"The North Augusta Electric and Improvement Co. contends: 1st. That plaintiff cannot collect the $101.58 in this lien proceeding, because it is not a debt due for labor performed or furnished, and, 2d. That the plaintiff had no right to apply the $452 upon the cash items.

"The first contention of the defendant company is sustained. Plaintiff neither performed or furnished any labor for the erection of the house. Plaintiff, with the consent of the Improvement Co. and of Mrs. Boatwright, advanced the money to pay the wages of the laborers, so that the work could go on. This, at most, was a loan of money and does not come within the provision of the statute. This statute is in derogation of common law, and must be strictly construed, and plaintiff for these items is not within the pale thereof. These items are refused. *Gray* v. *Walker,* 16 S. C., 143 ; *Geddes* v. *Bowden,* 19 S. C., 1.

"The $452 of the Improvement Co. applied long ago to the payment of plaintiff's cash advancements was legally so applied, and that matter ended.

"As we have seen, the Improvement Co. and Mrs. Boatwright consented to and authorized such advancements by plaintiff. It was a debt due to plaintiff for which the Improvement Co. was liable. The Improvement Co. paid the money without instruction as to its application. The Improvement Co. owed the plaintiff company two debts, so to speak: 1st, for materials furnished, for which plaintiff had a lien; and 2d, for cash advanced and for which plaintiff had no security. The Improvement Co. paid the money without any direction as to its application, and in that way it was received by the plaintiff. Under these circumstances it could apply the payment to either debt, and in so far as it actually applied such payments to the satisfaction of the debts for cash advanced, it acted legally within the scope of its rights, and the Improvement Co. cannot now disturb those payments. This contention of the North Augusta Electric and Improvement Co. is disallowed and rejected.

"The balance due upon the debt, as appears from the account of the North Augusta Electric and Improvement Co. to plaintiff for materials furnished and used in the construction of the said house, is $439.23, and for this amount plaintiff is entitled, together with the costs and disbursements of this proceeding."

To this decree the following exceptions were exhibited by the North Augusta Electric and Improvement Co.:

"1st. His Honor erred in not finding that the plaintiff had failed to sustain its lien and in not dismissing the complaint on the ground that there was a fatal variance between the *allegata* and *probata,* in this, that the complaint alleges that the material and cash for which the lien is claimed was sold, delivered and furnished by the plaintiff to the agents, representatives and servants of the defendant, North Augusta Electric and Improvement Co., by virtue of a contract or agreement with the agents, representatives and servants of said defendant; whereas, the undisputed evidence shows that whatever contract or agreement was entered into by the

plaintiff for the sale and furnishing of material and cash, was entered into, not with the agents, representatives or servants of said defendant, but with an independent contractor, to wit: B. F. Roberts; and that the plaintiff sold, delivered and furnished the said material and cash to him and not to the agents, representatives or servants of said defendant, as alleged in the complaint.

"2d. His Honor erred in finding that the plaintiff was entitled to a lien under section 3008 of the Code; for the reason that said section is not applicable to sub-contractor or persons dealing with an original contractor, and the undisputed evidence shows that the plaintiff was a sub-contractor and was dealing with an original contractor, B. F. Roberts, in furnishing the material and cash for which the lien is claimed.

"3d. He further erred in finding that the plaintiff was entitled to a lien under section 3008 of the Code, and that there had been a sufficient agreement or consent on the part of the defendant, North Augusta Electric and Improvement Co., to the furnishing of the alleged material and cash to entitle plaintiff to a lien even under said section 3008.

"4th. His Honor erred in not finding that the plaintiff was a sub-contractor or person dealing with an original contractor, and as such, if entitled to a lien at all, was entitled only upon compliance with the provisions of section 3009 of the Code; and further, in not finding that the plaintiff was not entitled to the lien claimed, nor to any lien whatever, because the evidence shows a failure on its part to give notice in writing, as required by said section, to the defendant, North Augusta Electric and Improvement Co., as the owner (or to its lawful agent), and also to the original contractor, B. F. Roberts, that it intended to claim such a lien.

"5th. His Honor erred in finding as a fact that the defendant, North Augusta Electric and Improvement Co., exercised or maintained a supervision over the construction of the house.

"6th. His Honor erred in finding generally that Mrs. M. M. R. Boatwright was the agent of the defendant, the North Augusta Electric and Improvement Co., and should have found that she was only its special agent for a particular purpose, to wit: the entering into a contract with B. F. Roberts for the construction of a house according to the plans and specifications submitted, at and for the sum of $1,800; he should have further found that the authority of Mrs. Boatwright as such agent was limited by the scope of her special agency and to the particular purpose for which she was appointed, and that the plaintiff had notice of the special character of her agency and the limited scope of her authority; he should have further found that she was not acting within the scope of her authority as agent of the defendant, so as to bind the defendant, in entering into the stipulation or agreement contained in the contract of August 12th, between herself and B. F. Roberts, that the said Roberts should purchase all material from the plaintiff.

"7th. His Honor erred in finding that the fact that the defendant, North Augusta Electric and Improvement Co., consented to and authorized the advance of cash by the plaintiff to pay the wages of the laborers, and should have found instead that whatever cash was advanced for labor by the plaintiff was advanced by it to the original contractor, B. F. Roberts, pursuant to an understanding and agreement between plaintiff and said Roberts, entered into without the authority or consent of said defendant, and in not further finding that when James R. League, said defendant's agent, was first informed by A. M. Boatwright of the existence of said agreement and arrangement, he notified said Boatwright, as agent of plaintiff, that said defendant was not a party to nor in any way bound by such agreement.

"8th. His Honor erred in finding that the advances of cash by plaintiff to B. F. Roberts was, (a) one of two debts owed the plaintiff by the defendant, and (b) constituted a debt due to plaintiff for which the defendant was liable; the error in finding being that, (a) such advances was not a debt

owed primarily by the defendant to plaintiff, because they were not made to plaintiff nor at its request; (b) such advances did not constitute a debt due to plaintiff for which the defendant was liable, because (a) the defendant did not promise to repay such advances made by plaintiff to Roberts, and, (b) such promise, if made at all, is not shown to have been in writing, and being a special promise on the part of defendant to answer for the debt, default, or miscarriage of another, to wit: B. F. Roberts, is not a promise upon which defendant can be charged.

"9th. His Honor erred in finding that the plaintiff could apply the money received by it from the defendant, to the payment of the debt due plaintiff by B. F. Roberts, for cash advanced him, because, (a) said debt was not a debt due by defendant or with which defendant could be charged; and (b) the stipulation contained in the contract or agreement between B. F. Roberts and Mrs. M. M. R. Boatwright, of August 12th, 1902, providing that the said Roberts should purchase all material for the construction of the house from plaintiff, which plaintiff had knowledge of before furnishing material, and relies on as the consent on the part of the defendant, to the furnishing of the material, necessary to establish its lien, expressly provides that in no event should the bills for such materials be allowed to exceed $1,400, and that said $1,400 was to be deducted from the contract price of $1,800, which defendant had agreed to pay for the construction of the house; his Honor should have found, therefore, that the plaintiff, claiming under this stipulation, was bound by it, and that in pursuance thereof, it should have deducted the amount due for material first, from the payments as made by defendant on account of the contract price up to $1,400, and applied the balance, if any, to the repayment of the cash advanced Roberts.

"10th. His Honor erred in not finding that the following items set forth in the bill of particulars attached to the complaint were improperly charged against the defendant, North Augusta Electric and Improvement Co., as cash advanced

for the payment of labor, and in not striking the same or portions thereof for the reasons given, to wit: 1st. Item of $30 charged as cash August 16th, because the evidence shows that the same was advanced to Roberts and by him expended in the payment of a note given by his wife to the Union Savings Bank, which he had indorsed. 2d. Item of $100 charged as cash August 30th, because the evidence shows that $49 thereof was deposited in bank by Roberts and thereafter included in a check given by him to Mrs. S. E. Slack, in payment of an indebtedness not in any way connected with the labor on the house. 3d. Item of $116 charged as cash September 16th, because the evidence shows that $40 thereof was used and expended in taking up a note given by B. F. Roberts to the Irish American Bank and indorsed by A. M. Boatwright; 4th. Item of $43 charged as cash November 13th, because the evidence shows that the same was used and expended in taking up two notes given by B. F. Roberts to the Irish American Bank, and indorsed by A. M. Boatwright, the one for $13 and the other for $30."

The Builder's Supply Co. filed the following additional grounds in support of the Circuit Judge in his decree:

"As to the $452, which has been applied by the plaintiff company to the partial extinguishment of the 'cash account,' which cash account, Judge Aldrich found, as a matter of fact, the defendant company was responsible for as an open account and which finding is excepted to by the defendant company, it is respectfully submitted as an additional ground for sustaining Judge Aldrich's finding that the application as made was legal, that even should the Court find (contrary to Judge Aldrich's finding, which, however, we submit should be sustained), that the defendant company was in no wise responsible for the 'cash account,' still we submit that the application was perfectly legal, for the reason that the money so applied was paid by the defendant company to the plaintiff company upon a written order of Roberts. Thereby Roberts in legal effect, we submit, himself paid over the whole $1,350 to the plaintiff, and orally (as we shall show)

directed and consented to the application which was made—
$452 being applied to cash account, of $553.58, and $898 to
the material account of $1,337.23, which Judge Aldrich finds
the defendant company is bound to pay in full under the lien
law."

The following exception to said decree was filed by plain-
tiff:

"That his Honor erred in not finding for the plaintiff
in the full sum claimed, viz: $540.81, thereby including the
$101.58, which it appears remains unpaid on the 'cash ac-
count,' it being submitted that it appears from the evidence
that plaintiff furnished $553.58 to pay laborers to work on
the house in question, which said cash was actually used for
labor actually done upon the house in question with the
consent (in the statutory sense) of defendant company;
hence, we submit that he should have held that plaintiff in
reality and in fact furnished labor upon said house and
should have granted them a lien for the balance due thereon,
viz: $101.58."

What we shall say in discussing these exceptions may be
premised by these observations. After a careful examina-
tion of all this testimony, oral and documentary, we are satis-
fied, as the Circuit Judge was, that Exhibits B, C and D
were signed at the same time and place, to wit: in the office
of the defendant, North Augusta Electric and Improvement
Co.; and furthermore, that the defendant, M. M. R. Boat-
wright, acted as the agent of said North Augusta Electric
and Improvement Co. (We may remark just here that
hereafter we shall refer to the defendant, North Augusta
Electric and Improvement Co. as the "North Augusta Co.,"
and the plaintiff as the "Builder's Co.")

It appears, also, by the evidence that the contractor, B.
F. Roberts, in writing, directed the North Augusta Co. to
pay amounts coming to him to the Builder's Co., which was
done to the extent of $1,350, which payments left $450 of
the sum of $1,800 still to be paid to B. F. Roberts upon the

completion of his contract. Quite a contention has arisen
amongst the parties hereto as to what law of this State it
was expected that the lien, if any, should fall under, the plain-
tiff contending that section 3008 of the Code of Laws of
this State of 1902 should govern, and which appears to be
set out in full in the Judge's decree; while the defendant, the
North Augusta Co., claims that section 3009 is alone appli-
cable, which, if so, would plainly prevent any recovery by the
plaintiff because of failure to give the notice in writing
therein required. The Judge held that section 3008 was
the governing law, and we are inclined to think that he was
correct in view of his findings of fact that Exhibits B, C
and D were also all signed by Mrs. M. M. R. Boatwright
as the agent of the North Augusta Co. We think the Cir-
cuit Judge has given most excellent reasons why she was
obliged to be the agent of said North Augusta Co.—the land
upon which the dwelling house was erected was, and is, the
property of the defendant, North Augusta Co. Said com-
pany agreed, after certain conditions were complied with by
Mrs. Boatwright, to convey to her said house and lot freed
from all claims and liens. The further fact was that the
North Augusta Co. took and holds the bond of B. F.
Roberts, signed by the Baltimore Surety Co., to hold the said
North Augusta Co. harmless for the acts and doings of B.
F. Roberts in and about the building of such dwelling house.
It should still be remembered that all of the parties, the
Builder's Co., the North Augusta Co., Mrs. M. M. R. Boat-
wright and B. F. Roberts, knew and agreed that the limita-
tions upon the expenditures for which the North Augusta
Co. was responsible in and about the construction of this
dwelling house was the sum of $1,800. Now, with this
understanding, let us consider the exceptions.

1. We cannot agree with this view of the appellant for
the reason that it asserts that the *allegata* and *probata* were
at fatal variance. Reference to the complaint, however, will
show that this claim is not well taken, for the second
allegation in the complaint reads: "Plaintiff, by

virtue of a contract and agreement with the agents of the defendant, furnished and sold to said agents, who were duly authorized to make such contract, and with the consent of said defendant, certain articles of material, cash, etc." Here the complaint alleges that the articles were sold not only upon a contract, but the complaint goes on to state with the consent of the said defendant. We are satisfied with the Circuit Judge's conclusion in this matter. This exception is, therefore, overruled.

We will next take up the 2, 3 and 4 exceptions. The question really presented by these exceptions is, Was the "consent" of the defendant, North Augusta Co., to the furnishing of all materials by the plaintiff made to appear? This is no longer a vexed question in this State since the decision of *Geddes* v. *Bowden,* 19 S. C., 1, 7. It is there stated: "It is, however, contended that the labor and material were furnished by the appellant with the 'consent' of the owners, and it is necessary, therefore, to determine the meaning of the word 'consent,' as used in this statute. The word 'consent' implies *'choice,'* and one can scarcely be regarded as giving his consent to that which he has no right to object to. In the experience of life, man is oftentimes compelled to accept results, in the sense that he makes no objection or opposition thereto, for the reason that he has no right or power so to do, but he cannot in any proper sense of the term, be regarded as consenting to them unless he has the right and the power to exercise a choice, to consent or object thereto. As is well said by Mr. Justice Simpson, in *Gray* v. *Walker,* 16 S. C., 147, in construing this statute: 'Consent here, we think, implies something more than a mere acquiescence in a state of things already in existence. It implies an agreement to that which, but for the consent, could not exist, and which the party consenting has the right to forbid.' "

In this case, the defendant, North Augusta Co., owned this land. They had agreed to build a one and one-half story dwelling house thereon, and to convey the same, free

of all claims and liens, to the defendant, Mrs. Boatwright; they had agreed to limit themselves to the sum of $1,800 for the building and material in said building. Who was in a position better than they to consent to all these things? How was it to be done except with their money being paid for them? It is idle to speak of any other conclusion. These exceptions are, therefore, overruled.

The fifth exception involves a pure question of fact, namely: Was the defendant, North Augusta Co., exercising a supervisory control over the construction of the house? We agree with the Circuit Judge that the testimony plainly establishes that fact. It is true their agent, Mr. League, was only proved to be at the house two or three times, but their otherwise agent was there many, many times. This exception, therefore, is overruled.

We will now consider the sixth exception. We cannot agree with the appellant, North Augusta Co., that Mrs. Boatwright was only the special agent of said company for a particular purpose, to wit: the entering into of a contract with Mrs. Roberts for the construction of a house according to the plans and specifications submitted for and at the sum of $1,800; for, to our minds, the testimony, both oral and documentary, well established her agency in other respects as found by the Circuit Judge. We, therefore, overrule this exception.

We will now consider the 7, 8 and 9 exceptions. We take this view as a practical matter. The defendant, North Augusta Co., had agreed to build this dwelling house and deliver it finished to their co-defendant, Mrs. Boatwright. To furnish labor and material necessary to the erection of such dwelling house was, in contemplation of law, its duty. By the terms of their contract they paid $1,350. The application of such $1,350 to the payment of the cost of labor and the cost of material was a matter which did not greatly concern them so long as kept within reasonable limits, because labor had to be furnished, and to be furnished had to be paid for, and cash must be furnished for that purpose, and such

25—71.

was the actual application of this money. We agree with the Circuit Judge, therefore, in his conclusions in regard to these matters, and, hence, we overrule these exceptions.

We will now consider the 10th exception. We do not see that there is any force in the items referred to in this exception, and after a thorough consideration of the testimony we overrule the same.

But, now, as to the Builder's Supply Co., we are not satisfied that the lien under section 3008 of our Code of Laws of 1902 should cover anything else than the $1,800 which had been agreed upon by all parties as the limit of the money to be paid by the defendant, North Augusta Co., for the construction of this dwelling house. It has paid all but $450 that it stipulated to pay. This should be the difference between $1,800 and $1,350, to wit: $450, which should be the limit of the recovery of the plaintiff, Builder's Supply Co., of the defendant, North Augusta Electric and Improvement Co. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be modified by inserting the sum of $450 instead of $439.23, as the amount in which the North Augusta Electric and Improvement Co. is indebted to the plaintiff upon the lien described in these proceedings; and in all other respects the judgment of the Circuit Court is affirmed.

Mr. Justice Gary *did not sit in this case because of illness.*